STRATEGIC CAPITAL      *      NO. 2021-CA-0672
HOLDINGS, LLC

     *

VERSUS      COURT OF APPEAL

     *

GILBERT P. BENNETT, III      FOURTH CIRCUIT
AND HITHE-JAH      *
PROPERTIES, LLC      STATE OF LOUISIANA

* * * * * * *

CONSOLIDATED WITH:      CONSOLIDATED WITH:

HITHE-JAH PROPERTIES, LLC      NO. 2021-CA-0673

VERSUS

STRATEGIC CAPITAL
HOLDINGS, LLC, GILBERT P.
BENNETT, III AND THE CITY OF
NEW ORLEANS

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2014-06771, DIVISION "N-8"
Honorable Ethel Simms Julien, Judge
* * * * * *
**JUDGE SANDRA CABRINA JENKINS**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Sandra Cabrina Jenkins,
Judge Tiffany Gautier Chase)

**CHASE, J., CONCURS IN THE RESULT**

Jonah A. Freedman
JONAH FREEDMAN LAW, LLC
700 Camp Street, Suite 316
New Orleans, LA 70130

     COUNSEL FOR PLAINTIFF/APPELLEE

Scott Joseph Sonnier
ATTORNEY AT LAW
601 Poydras Street
Suite 2355
New Orleans, LA 70130

     COUNSEL FOR DEFENDANT/APPELLANT

**AFFIRMED**

**JULY 29, 2022**

In this action to confirm title brought by a holder of a tax sale interest, appellant, Hithe-Jah Properties, LLC ("Hithe-Jah") appeals the trial court's May 19, 2021 grant of summary judgment, confirming and quieting the tax title. Hithe-Jah also appeals the trial court's July 14, 2021 judgment denying its motion for new trial. For the reasons that follow, we affirm both judgments.

**FACTUAL AND PROCEDURAL BACKGROUND**

This suit involves an action to confirm tax title filed by Strategic Capital Holdings, LLC ("Strategic"), and an action to redeem and/or annul tax sale filed by Hithe-Jah. Both actions concern property located at 5518-20 Claiborne Avenue in New Orleans (the "property").

On September 26, 2007, Hithe-Jah acquired the property by a cash sale. On November 2, 2009, the City of New Orleans (the "City") issued a notice of tax sale to Hithe-Jah for delinquent 2008 *ad valorem* taxes. Thereafter, the property was sold at a tax sale to Gilbert P. Bennett ("Mr. Bennett"). The tax sale certificate was recorded in the Orleans Parish conveyance records on February 2, 2010.

1

Subsequently, Mr. Bennett failed to pay the 2009 *ad valorem* taxes. In 2009, the City sent notices of delinquent tax to Hithe-Jah for unpaid 2009 *ad valorem* taxes. The City conducted another tax sale, and the property was sold to Lakeview Holdings, LLC ("Lakeview"). The tax sale certificate was recorded in the conveyance records on October 27, 2010.

On August 3, 2011, the City issued post-tax sale notice to Hithe-Jah, informing that the property had been sold to Mr. Bennett for unpaid 2008 *ad valorem* taxes and further advising of its redemption rights.

On June 5, 2014, Strategic acquired the property by non-warranty cash sale from Lakeview. Thereafter, on July 11, 2014, Strategic filed a petition to confirm tax title, naming as defendants Gilbert P. Bennett and Hithe-Jah. Mr. Bennett assigned all of his rights to the 2009 tax sale to Strategic by a non-warranty cash sale, which was recorded in the conveyance records on November 7, 2014.

On April 8, 2015, Hithe-Jah filed a petition to redeem and/or annul tax sale. The actions to confirm tax title and redeem and/or annul tax sale were consolidated.

On October 15, 2019, 5518C, LLC ("5518C") attained interest in the property from Strategic by an act of transfer, assignment, and subrogation agreement. 5518C was subsequently substituted as the plaintiff in the petition to confirm tax title. On March 9, 2021, 5518C filed a motion for summary judgment. A hearing on the motion for summary judgment was held on May 7, 2021. On May 19, 2021, the trial court rendered a judgment granting the summary judgment, confirming and quieting the tax title, and recognizing 5518C as the sole owner of the property.

Hithe-Jah filed a motion for new trial, and the trial court denied the motion on July 14, 2021. On August 13, 2021, Hithe-Jah filed a motion for suspensive appeal. This appeal timely followed.

**STANDARD OF REVIEW**

An appellate court reviews summary judgments under the *de novo* standard of review, using the same standard applied by the trial court in deciding the motion for summary judgment; as a result, we are not required to analyze the facts and evidence with deference to the judgment of the trial court or its reasons for judgment. *Precept Credit Opportunities Fund, L.P. v. Elmore*, 2021-0502, p. 3 (La. App. 4 Cir. 4/20/22), 338 So.3d 87, 89-90 (citing *Smith v. State*, 2018-0197, p. 3 (La. App. 4 Cir. 1/9/19), 262 So.3d 977, 980). Therefore, "[a]fter an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). "In determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony, or weigh evidence." *Lewis v. Jazz Casino Co.*, 2017-0935, p. 6 (La. App. 4 Cir. 4/26/18), 245 So.3d 68, 72 (citing *Fiveash v. Pat O'Brien's Bar, Inc.*, 2015-1230, p. 7 (La. App. 4 Cir. 9/14/16), 201 So.3d 912, 917).

The mover bears the burden of proof on summary judgment:

> Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

3

La. C.C.P. art. 966 (D)(1).

**DISCUSSION**

Hithe-Jah argues that the trial court erred in granting the motion for summary judgment, and confirming the tax sale. Hithe-Jah asserts six assignments of error:

1) The trial court erred in granting summary judgment in favor of Strategic.

2) The trial court erred in ruling in favor of Strategic in quieting the title of 5518.

3) The trial court erred in ruling that it was given proper notice.

4) The trial court erred in not allowing it to redeem a litigious right.

5) The trial court erred in not finding the tax sale statutes unconstitutional.

6) The trial court erred in not ordering a reimbursement of taxes it paid.

While Hithe-Jah assigns six errors, we narrow our discussion to four issues: 1) whether the trial court erred in not finding the tax sale statutes unconstitutional; 2) whether the trial court erred in granting summary judgment and confirming the tax sale; 3) whether the trial court erred in not allowing Hithe-Jah to redeem a litigious right; and 4) whether the trial court erred in not ordering reimbursement to Hithe-Jah for paid taxes. We begin our discussion by addressing the constitutionality of the tax statutes.

***Constitutionality of Tax Statutes***

Hithe-Jah argues that the tax sale statutes are unconstitutional. Hithe-Jah further contends that the issue of the constitutionality of the statutes was raised in its motion for new trial and the attorney general was notified of the constitutional challenge.

4

"A constitutional challenge must be specially pled in the trial court with the grounds for the claim particularized." *In re Succession of Faget*, 2005-1435, p. 9 (La. App. 1 Cir. 6/9/06), 938 So.2d 1003, 1008 (citing *Mallard Bay Drilling, Inc. v. Kennedy*, 2004–1089, p. 9 (La. 6/29/05), 914 So.2d 533, 541). "[W]hen the issue of the constitutionality of a statute is first raised in a motion for new trial after a judgment adverse to the moving party, it does not consider the issue timely raised and cannot be considered by the appellate court." *Bergeron v. Blake Drilling & Workover Co., Inc.*, 599 So.2d 827, 848-49 (La App. 1st Cir. 1992) (citing *Jarred v. Jarred*, 355 So.2d 566, 569 (La. App. 3rd Cir. 1978)).

Here, Hithe-Jah raised the issue of constitutionality for the first time in its motion for new trial. Therefore, we will not consider this issue, as it was not properly raised in the trial court. *See In re Succession of Faget*, 2005-1435, p. 9, 938 So.2d at 1008.

### *Notice Requirements*

Hithe-Jah argues that summary judgment was not proper and the tax sale should be annulled because there was a lack of notice to Mr. Bennett. Hithe-Jah further argues that it is irrelevant that it received notice of the tax sale because without notice to all co-owners, the sale is void.

In support of the motion for summary judgment, 5518C submitted the affidavits of Ann Marie Sledge and Stephen D. Morel. Ms. Sledge indicated that Civic Source provided services to the City related to the collection of delinquent property taxes. Ms. Sledge verified that on September 14, 2010, the City held a tax sale to collect delinquent taxes and pre-tax sale notices were mailed to Hithe-Jah on April 9, 2009, October 1, 2009, and November 2, 2009. Ms. Sledge provided that a returned certified mailing receipt for a pre-tax sale notice was signed on

November 5, 2009. Ms. Sledge further verified that post-tax sale notice was mailed on August 5, 2011 via first class mail to Hithe-Jah, and the record of the City reflected that none of the first-class mailings were returned undeliverable.

In Mr. Morel's affidavit, he provided that he is the registered agent of 5518C, and was a member of Strategic. Mr. Morel indicated that on June 5, 2014, Strategic acquired Lakeview's October 27, 2010 tax sale certificate by a non-warranty cash sale. Mr. Morel also confirmed that on October 2, 2014, Strategic also acquired rights to Mr. Bennett's February 2, 2010 tax sale deed by a non-warranty cash sale. Mr. Morel further confirmed that on October 15, 2019, 5518C acquired the tax sale certificate of the property from Strategic in an act of transfer, assignment, and subrogation agreement. Mr. Morel verified that Strategic and 5518C did not receive any notices of redemption of the tax sale certificate.

In opposition to 5518C's motion for summary judgment, Hithe-Jah argued that it did not receive notice of the tax sale from the City or from Mr. Bennett. Hithe-Jah further argued that the tax title is an absolute nullity. Hithe-Jah attached to its opposition the affidavit of Randall A. Hithe. Mr. Hithe attested that he is a member and registered agent for Hithe-Jah, and Hithe-Jah acquired the property by an act of sale dated October 11, 2007. Mr. Hithe attested that Hithe-Jah did not receive notice that property taxes were due and did not receive notice of the tax sale.

*Pre-Sale*

La. Const. Article VII, Section 25(A)(1) mandates that the tax collector provide notice of tax delinquencies in the manner provided by law. La. R.S. 47:2206 provides that either the political subdivision or the acquiring person shall send a written notice notifying any tax sale party whose interest the successful

6

bidder or donee intends to terminate. *See Flag Boy Properties, LLC v. Dickerson*, 2019-0754, p. 5 (La. App. 4 Cir. 1/29/20), 291 So.3d 241, 244.

In *Surcouf v. Darling*, 2015-0278, p. 8 (La. App. 4 Cir. 10/21/15), 177 So.3d 1085, 1091 this Court discussed the fundamental notice requirements:

> Both the Fourteenth Amendment to the United States Constitution and Art. I, § 2 of the Louisiana Constitution guarantee due process of law before the deprivation of life, liberty, or property. It is therefore well-established that prior to instituting an action which will affect an interest in property, a state must provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950).
>
> Moreover, due process requires that the state give "[n]otice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party ... if its name and address are reasonably ascertainable." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) (emphasis in original). Although a property owner need not receive *actual* notice before his property is taken, when a mailed notice of a tax sale is returned unclaimed, the state "must take additional reasonable steps to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Jones v. Flowers*, 547 U.S. 220, 225-26, 126 S.Ct. 1708, 164 L.Ed.2d 415 (2006). (emphasis in original)

In this case, the City sent pre-sale tax notices to Hithe-Jah. The record reflects that the notices were sent on April 9, 2009, October 1, 2009, and November 2, 2009. The pre-sale notices were sent via First Class U.S. Mail. Accordingly, Hithe-Jah's contention that it is irrelevant whether it received notice of the tax sale lacks merit. We now address post-sale notice.

*Post-Sale*

Hithe-Jah argues that there is no evidence of notice being provided to Mr. Bennett, and the tax sale certificate is defective.

La. R.S. 47:2121(C)(1) provides in pertinent part:

A tax sale confers on the tax sale purchaser ... only tax sale title. If the tax sale title is not redeemed within the redemptive period, then at the termination of the redemptive period, tax sale title transfers to its holder ownership of the tax sale property, free of the ownership and other interest, claims, or encumbrances held by all duly notified persons.

There are three grounds to nullify a tax certificate pursuant to La. R.S. 47:2286: "[n]o tax sale shall be set aside except for a payment nullity, redemption nullity, or a nullity under R.S. 47:2162, all of which are relative nullities."

In *Stow-Serge v. Side by Side Redevelopment, Inc.*, 2020-0015 (La. App. 4 Cir. 6/10/20), 302 So.3d 71, two tax sale purchasers disputed ownership of immovable property. The possessor and most recent tax sale purchaser, Stow-Serge, sought to quiet the title, and named the former tax sale purchasers as defendants. The trial court granted partial summary judgment in favor of Stow-Serge as to ownership. The *Stow-Serge* court explained that there is "a two-step process in order for title of the property to transfer ownership: 1) expiration of the redemptive period; and 2) notification of all required persons." *Id.*, 2020-0015, p. 4, 302 So.3d at 76. Moreover, the term 'tax sale' means that it is the tax lien that is purchased in the form of tax sale title, "with future rights of ownership after due notice to all 'tax sale parties' and the expiration of the redemptive period, as well as the filing of a suit to quiet title." *Id.*, 2020-0015, p. 4, 302 So.3d at 76 (*quoting Central Properties v. Fairway Gardenhomes, LLC,* 2016-1855, 2016-1946, p. 12 (La. 6/27/17), 225 So.3d 441, 449). The *Stow-Serge* court found that because the redemptive period expired and the former tax sale purchaser was duly notified of the tax sale and the expiration of the redemptive period, there was no genuine issue of material fact as to the validity of the tax sale, noting that the notice included the property listed, the notice of the sale, the notice of the right to redeem, information

8

on how to redeem, notice of the date of expiration of that right, and the tax bill and instrument number by which to identify the amount owed, and therefore met due process requirements. *Id.*, 2020-0015, p. 8, 302 So.3d at 78.

The Louisiana Supreme Court has recognized that under the applicable statutory law, the failure to give post-sale notice does not nullify a tax sale if the property owner was provided the statutorily required pre-sale notice of delinquency and tax sale. *Hamilton v. Royal Int'l Petroleum Corp.*, 2005-0846 (La. 2/22/06), 934 So.2d 25, 30-31. The Court provided that under both federal and state constitutional mandates, notice to a property owner of potential loss of property is a matter of due process. *Id.*, 2005-846, p. 7, 934 So.2d at 30 (citing *Giordano v. MacDonald*, 98-2035, p. 6 (La. App. 4 Cir. 3/10/99), 729 So.2d 760, 762).

In this case, in addition to pre-sale notice, Hithe-Jah received post-sale notice informing of its redemption rights. "A redemption nullity is 'the right of a person to annul a tax sale in accordance with R.S. 47:2286 because he was not duly notified at least six months before the termination of the redemptive period.'" *Precept*, 2021-0502, p. 11, 338 So.3d at 94 (quoting La. R.S. 47:2122(10)). To be duly notified, pursuant to La. R.S. 47:2122(4), means that:

> [a]n effort meeting the requirements of due process of law has been made to identify [a particular person]; and to provide that person with a notice that meets the requirements of La. R.S. 47:2156, 2157, 2206, 2236, or 2275..., regardless of any of the following:
>
> > (a) [w]hether the effort resulted in actual notice to the person,
> >
> > (b) [w]hether the one who made the effort was a public official or a private party.
> >
> > (c) [w]hen, after the tax sale, the effort was made.

The record provides that the City sent post-tax sale notice to Hithe-Jah on August 5, 2011. The notice provided that the property was sold to Mr. Bennett for delinquent taxes in the year 2008, referenced Tax Bill number 614341410, and further indicated that the property could be redeemed within three years from February 2, 2013. Additionally, the post-sale notice was sent approximately one and one-half years before the expiration of the redemptive period. *See* La. R.S. 47:2122(10). Similar to *Stow-Serge*, Hithe-Jah failed to redeem the property before the statutory expiration date and no longer has ownership or interest in the property.

Moreover, we find that Hithe-Jah and Mr. Bennett are not co-owners of the property. Hithe-Jah, therefore lacks the authority or capacity to attack the validity of the tax sale on behalf of Mr. Bennett. The lack of notice to Mr. Bennet does not affect the outcome that Hithe-Jah was provided sufficient notice. Hithe-Jah initially acquired ownership of the property through a cash sale, and Mr. Bennett acquired interest in the property by a tax sale for Hithe-Jah's delinquent 2008 *ad valorem* taxes. As a result of Hithe-Jah's failure to exercise its redemption rights, its interest in the tax sale title transferred to Mr. Bennett. *See* La. R.S. 47:2121(C)(1).

We further note that Mr. Bennett assigned all of his rights to the 2009 tax sale to Strategic by a non-warranty cash sale, and he was dismissed from this action with prejudice. Thereafter, Strategic transferred all of its rights in the 2009 tax sale to 5518C.

Based on the evidence submitted by 5518C, and Hithe-Jah's lack of evidence to controvert that it was not duly notified, we find that Hithe-Jah was duly notified through pre-sale and post-sale tax notice. Accordingly, we find that summary judgment was properly granted in favor of 5518C.

10

***Litigious Right***

Next, Hithe-Jah argues that Mr. Bennett's sale of his rights to the 2009 tax sale title is the sale of a litigious right that is subject to redemption under La. C.C. art. 2652. Hithe-Jah relies on *Crain v. Waldron*, 27 So.2d 333 (La. 1946), to support its contention that a transfer of property was a transfer of a litigious right.

La. C.C. art. 2642 provides that "[a]ll rights may be assigned, with the exception of those pertaining to obligations that are strictly personal. The assignee is subrogated to the rights of the assignor against the debtor."

La. C.C. art. 2652 provides:

> When a litigious right is assigned, the debtor may extinguish his obligation by paying to the assignee the price the assignee paid for the assignment, with interest from the time of the assignment.
>
> A right is litigious, for that purpose, when it is contested in a suit already filed.
>
> Nevertheless, the debtor may not thus extinguish his obligation when the assignment has been made to a co-owner of the assigned right, or to a possessor of the thing subject to the litigious right.

*Crain* involved a dispute between a father and his ten children over each individual's ownership stake in certain lands located in Cameron Parish, Louisiana. *Crain*, 27 So.3d at 333. Subsequent to the filing of the lawsuit, the father sold his interest in the land to three individuals who were substituted into the lawsuit as plaintiffs. *Id.* at 334. During the course of trial, the children sought to redeem their father's claim to the land, alleging that their father had assigned a litigious right when he sold his interest in the land. In controvention, the substituted plaintiffs alleged that they did not receive a litigious right "since all the parties admitted the others' rights to a partition." *Id.* The Court acknowledged that the substituted plaintiffs' argument applied the correct principle of law; however, the Court

11

rejected the argument because the parties disagreed about the portion of the property to which each individual was entitled. The Court found that because there was a dispute in the quantity of ownership interest, the sale of the interest was litigious. *Id.* at 334.

Here, we find that Hithe-Jah's reliance on *Crain* is misplaced. "[T]he Louisiana Supreme Court described as a 'correct principle of law[,]' the contention that 'the sale of property involved in a partition suit is not a transfer of a litigious right under the codal article, since all the parties admitted the others' rights to a partition.'" *CHS, Inc. v. Plaquemines Holdings, LLC*, 484 B.R. 302, 309 (E.D. La. 2012). The sale at issue in *Crain* involved rights in a partition proceeding where one co-owner sought recognition of an increased share of the property interest. *Crain* defined an exception to the above-stated principle and held that Article 2652 should apply to a partition proceeding when the parties dispute each other's interest in the property. *CHS, Inc.*, 484 B.R. at 309.

Distinguishable from *Crain*, this proceeding is not a partition proceeding. 5518C, as a substituted plaintiff, sought to quiet the tax title. Unlike the father and children in *Crain*, Mr. Bennett and Hithe-Jah are not co-owners of the property. Hithe-Jah's tax sale title interest transferred to the holder of the tax sale title on February 2, 2013. *See* La. R.S. 47:2121(C)(1). Therefore, Hithe-Jah no longer had interest in the property.

Further, Hithe-Jah was not a debtor to Mr. Bennett, therefore, there was no obligation for Hithe-Jah to extinguish. *See* La. C.C. art. 2652. Mr. Bennett's assignment of his tax sale title rights to Strategic was to confirm and quiet a tax sale certificate to which Hithe-Jah no longer had interest. Therefore, we find that

the trial court did not err in finding that Hithe-Jah was not entitled to redeem litigious rights.

### *Reimbursement of Taxes*

Hithe-Jah argues that the trial court erred in finding that 5518C should reimburse Hithe-Jah for taxes it paid subsequent to the tax sale. Hithe-Jah further argues that 5518C was unjustly enriched.

The record indicates that this argument was not raised before the trial court. As a general rule, appellate courts will not consider issues raised for the first time on appeal, which were not raised in the pleadings and were not addressed by the trial court. *Lee v. Sapp*, 2018-0828, p. 5 (La. App. 4 Cir. 2/20/19), 265 So.3d 898, 902 (citing *Geiger v. State ex rel. Dept. of Health and Hosp.*, 2001-2206, p. 10 (La. 4/12/02), 815 So.2d 80, 86). Accordingly, this argument is without merit.

## CONCLUSION

For the reasons assigned, we affirm the May 19, 2021 judgment granting the motion for summary judgment, and the July 14, 2021 judgment denying the motion for new trial.

**AFFIRMED**